IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROMAN CATHOLIC ARCHDIOCESE
OF KANSAS CITY IN KANSAS and
ST. ROSE PHILIPPINE DUCHESNE
CATHOLIC CHURCH,

Plaintiffs,

v.

CITY OF MISSION WOODS,

Defendant.

Case No. 17-2186-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on the motion of plaintiffs Roman Catholic Archdiocese of Kansas City in Kansas ("the Archdiocese") and St. Rose Philippine Duchesne Catholic Church ("St. Rose Church") for a permanent injunction (Doc. 87). Defendant City of Mission Woods has filed a Response (Doc. 91). And plaintiffs have filed a Reply (Doc. 95). The court grants plaintiffs' motion for the reasons explained, below.

**I.      Facts**

St. Rose Church began holding religious services in Mission Woods in 2013. As the congregation grew, plaintiffs looked to expand. In 2015, plaintiffs acquired a single-family house next to the church's property. Plaintiffs planned to renovate the house, converting it into a meeting house. So, in February 2016, plaintiffs submitted a land use request—*i.e.*, their renovation plan—to defendant's City Plan Commission. The Commission denied plaintiffs' land use request, citing local zoning laws as its reason.

After defendant denied the request, plaintiffs sued, bringing claims under the Substantial Burden, Equal Terms, Nondiscrimination, and Unreasonable Limitations provisions of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5; the First Amendment through 42 U.S.C. § 1983; Section 7 of the Kansas Constitution Bill of Rights; and the Kansas Preservation of Religious Freedom Act. Doc. 1 at 22–30.[1]

In November 2018, the case went to trial. The jury returned a verdict for plaintiffs on their RLUIPA Equal Terms claim, concluding that Pembroke Hill School ("Pembroke") was similarly situated to plaintiffs in its land use request and that defendant had treated Pembroke more favorably than plaintiffs.[2] Doc. 86 at 1. The jury awarded plaintiffs $10,000 in damages. *Id.* at 6. But, the jury found for defendant on the rest of plaintiffs' claims—*i.e.*, RLUIPA Substantial Burden and Nondiscrimination claims; First Amendment claims; and Kansas state law claims. *Id.* at 1–6.

After trial, plaintiffs filed a Motion for Permanent Injunction (Doc. 87). It asks the court to issue an injunction requiring defendant to approve plaintiffs' 2016 land use application. Approving this land use application would permit plaintiffs to renovate the single-family house into a meeting house.

## II. Legal Standard

The court may enter a permanent injunction if the moving party proves "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the

---

[1] The court granted defendant's Motion for Summary Judgment against plaintiffs' Unreasonable Limitations claim. Doc. 58 at 40–41. The court also granted summary judgment against plaintiffs' Equal Terms claim to the extent they based it on the University of Kansas Hospital Authority as a similarly situated secular entity. *Id.* at 41.

[2] "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

injunction, if issued, will not adversely affect the public interest." *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003); *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007). In fashioning a permanent injunction, the court must tailor the remedy narrowly to conform to the harm shown. *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002).

The court applies these four requirements in the "Discussion" portion of this order, which follows.

## III. Discussion

### A. Success on the Merits

Plaintiffs have achieved an actual success on the merits: At trial, the jury found for plaintiffs on their Equal Terms claim. Doc. 86 at 1. Defendant aims to modulate this outcome, arguing that plaintiffs achieved only "limited success on the merits" because the jury did not find for plaintiffs on their other four claims. Defendant does not cite any case law recognizing its theory that limited success differs from actual success. The court is unpersuaded by defendant's argument. Indeed, other courts have rejected it implicitly. *See Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs*, 612 F. Supp. 2d 1157, 1160 (D. Colo. 2009) (concluding plaintiff had achieved success on the merits when jury entered favorable verdict on three out of plaintiff's four RLUIPA claims). The court holds that plaintiffs have succeeded on the merits because the jury returned a verdict in plaintiffs' favor on their Equal Terms claim.

### B. Irreparable Harm

The favorable Equal Terms verdict supports a finding that plaintiffs are suffering irreparable harm. Defendant's argument to the contrary is unavailing. Defendant contends that plaintiffs have not shown irreparable harm because the jury entered a favorable verdict for

3

plaintiffs on their Equal Terms claim but not on their Substantial Burden claim. Defendant concedes that unequal treatment is a cognizable harm protected by RLUIPA. But, defendant contends that success on an Equal Terms claim alone does not necessarily support a finding of irreparable harm.

The court rejects the premise that plaintiffs' favorable verdict on their Equal Terms claim alone cannot satisfy the irreparable harm standard. In *Rocky Mountain*, the court considered whether favorable jury verdicts for plaintiff's Substantial Burden, Equal Terms, and Unreasonable Limitations claims under RLUIPA satisfied the irreparable harm prong of the inquiry. 612 F. Supp. 2d at 1160. The court concluded that the favorable RLUIPA verdicts sufficed:

> The violation of one's right to the free exercise of religion necessarily constitutes irreparable harm. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1008 (10th Cir. 2004). . . . The fact that the [Rocky Mountain Christian Church's ("RMCC")] free exercise rights in this case are based on statutory claims under the RLUIPA rather than on constitutional provisions does not alter the irreparable harm analysis. *See, e.g.*, *Kikumara v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("courts have held that a plaintiff satisfies the irreparable harm analaysis by alleging a violation of RFRA"); *Jolly v. Coughlin*, 76 F.3d 468, 482 ([2d] Cir. 1996) ("although plaintiff's free exercise claim is statutory rather than constitutional, the denial of the plaintiff's right to the free exercise of his religious beliefs is a harm that cannot be adequately compensated monetarily"). The RMCC has demonstrated irreparable harm.

*Id.*

The analysis here is the same as in *Rocky Mountain*. The jury entered a favorable verdict on plaintiffs' Equal Terms claim under RLUIPA. Following *Rocky Mountain*, which did not distinguish among the plaintiff's favorable RLUIPA verdicts, defendant's violation of plaintiffs' statutory right of free exercise constitutes irreparable harm. An Equal Terms violation is not a

4

second-class RLUIPA claim. Instead, "RLUIPA identifies 'the use, building, or conversion of real property for the purpose of religious exercise [as] religious exercise of the person or entity that uses or intend to use the property for that purpose.' § 2000cc-5(7)." *Christian Fellowship Ctrs. of N.Y., Inc. v. Vill. of Canton*, No. 8:19-CV-191 (LEK/DJS), 2019 WL 1428344, at *12 (N.D.N.Y. Mar. 29, 2019) (emphasis in original) (considering whether irreparable harm requirement is met under an Equal Terms claim alone). So, "every day the [religious institution] cannot use '*the* property' it bought for religious purposes prevents it from engaging in 'religious exercise' in Congress's eyes." *Id.* (emphasis in original) (citation omitted).

The lone appellate court to reach the issue has rejected defendant's argument that plaintiff must secure a favorable Substantial Burden verdict to satisfy the irreparable harm prong. In *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012), a church congregation challenged a city zoning ordinance, which had prevented the church from renovating a leased property into a church. *Id.* at 282–83. The plaintiff church filed a motion for preliminary injunction asking the district court to enjoin enforcement of the ordinance. *Id.* at 284. The district court concluded that the church had failed to show irreparable harm and thus denied the plaintiff's injunction request. *Id.* On appeal, the Fifth Circuit considered whether the church had satisfied the preliminary injunction requirements based solely on the plaintiff's RLUIPA Equal Terms claim. *Id.* at 288–89. It held that the district court had erred in its irreparable harm analysis, "[m]ost basically . . . because [the church had] alleged violations of its First Amendment and RLUIPA rights." *Id.* at 295. And, the Fifth Circuit squarely rejected the argument that defendant makes here. Specifically, the municipal defendant in *Opulent Life* argued that the church could not establish irreparable harm because it had failed to demonstrate a substantial burden. *Id.* at 296 n.18. But the Fifth Circuit rejected this proposition:

5

> [The defendant] cites authority for the proposition that substantial burdens amount to irreparable harm and then concludes "[c]onversely, if no substantial burden, then no irreparable injury." But this argument fails because it rests on a logical fallacy. A substantial burden may well be (and probably is) sufficient to establish irreparable injury, but it surely is not necessary.

*Id.* at 296 n.18; *see also Christian Fellowship Ctrs.*, 2019 WL 1428344, at *12–13 (finding *Opulent Life* persuasive and concluding irreparable harm standard met on plaintiff's Equal Terms claim alone).

The court finds the reasoning applied in *Opulent Life* highly persuasive. It is consistent with *Rocky Mountain*: Together, the two cases recognize that a RLUIPA violation—whether based on the statute's Substantial Burden, Equal Terms, or Nondiscrimination provisions—infringes on the free exercise of religion. A favorable verdict on plaintiffs' Substantial Burden claim might have bolstered the irreparable harm showing; but the court concludes—as did the Fifth Circuit—that such an outcome is not a necessary condition to establish irreparable harm.

### C. Balance of Harms

The balance of harms weighs in plaintiffs' favor. This factor weighs the plaintiffs' injury against the harm that an injunction might impose on the defendant. The jury concluded that defendant had infringed on plaintiffs' statutorily protected right under RLUIPA's Equal Terms provision, and a RLUIPA violation is a substantial harm. *See Rocky Mountain*, 612 F. Supp. 2d at 1160–61.

Again, defendant argues that plaintiffs' suffered harm here is "far weaker" than that sustained by the plaintiff in *Rocky Mountain*. And, again, defendant rests its proposition on plaintiffs' success on only their Equal Terms claim. But this argument, even if correct, misses the more important point. The question isn't whether plaintiffs claimed they had sustained a greater RLUIPA injury than the jury ultimately found. Instead, the correct question asks whether

plaintiffs have sustained sufficient harm to merit injunctive relief. And, putting an even finer point on it, the question under the third factor asks whether "the threatened injury outweighs the harm that the injunction may cause the opposing party." *Fisher*, 335 F.3d at 1180.

Again, the court finds the analysis of this factor in *Opulent Life* highly persuasive. There, just as the court must consider here, the Fifth Circuit considered whether the balance of harms favored the plaintiff church when the harm resulted solely from RLUIPA's Equal Terms provision. The Fifth Circuit had concluded that the plaintiff church had satisfied the irreparable harm standard. Given this outcome, the Fifth Circuit held, the defendant "would need to present powerful evidence of harm to its interests to prevent [the church] from meeting [the balance of harms] requirement" of the injunction analysis. *Opulent Life*, 697 F.3d at 297.

Here, defendant argues, it has made the requisite showing and tipped the balance of harms in its favor. Defendant claims that an injunction mandating that defendant approve plaintiffs' 2016 application would create noise and this noise could disrupt the neighboring residents' quiet enjoyment of their homes. Doc. 91 at 6. This argument replicates an argument rejected twice in the *Rocky Mountain* case.

In *Rocky Mountain*, the defendant argued that permitting the church's expansion would "cause the negative impacts predicted by certain witnesses who testified at trial." 612 F. Supp. 2d at 1161. And, "[i]n fact, some witnesses at trial did testify that they anticipated certain negative impacts if the RMCC [was] allowed to expand its facilities as proposed in its special use application." *Id.* But, the court concluded that plaintiff's statutorily protected right to free exercise of religion, on balance, outweighed the harms advanced by the defendant. *Id.* On appeal, the Tenth Circuit affirmed the district court's holding: "Contrary to the [defendant's] claims, the district court plainly weighed the County's zoning interest: the court did not agree

7

that [plaintiff's] special use application violated the County Land Use Code, and found that RMCC's statutory right to free exercise of religion outweighed the negative impacts of expansion on the community." *Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs*, 613 F.3d 1229, 1240 (10th Cir. 2010).

The court reaches the same conclusion on the facts established here. The court is mindful of defendant's interest in providing quiet enjoyment of property to its residents. And, defendant indeed presented some trial evidence that noise from the meeting house concerned some of defendant's residents. But in the end, the harm imposed on plaintiffs' RLUIPA rights exceeds the concerns expressed by nearby residents. The jury found that defendant had permitted comparable uses of private property within its borders despite similar residential concerns. Specifically, the trial evidence showed that defendant had permitted Pembroke to expand use of recreational facilities over objections that this would interfere with residents' quiet enjoyment of their properties. And the court's use of the word "permitted" is purposeful, for defendant formally approved Pembroke's land use requests. Given defendant's manifest conclusion that quiet enjoyment concerns weren't paramount in that setting, defendant's argument is unpersuasive here. Plaintiffs have sustained their burden on this third prong. Defendant has not.

### D. Public Interest

The court also concludes that the injunction is not adverse to the public interest. "'Vindicating First Amendment freedoms is clearly in the public interest.'" *Rocky Mountain*, 612 F. Supp. 2d at 1161 (quoting *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005)). "This principle applies equally to injunctions protecting RLUIPA rights because . . . RLUIPA enforces the First Amendment and must be construed broadly." *Opulent Life Church*, 697 F.3d at 298.

8

Defendant argues, based on the verdict, that the public interest does not favor an injunction requiring defendant to grant plaintiffs' land use application. Instead, defendant argues that the "evidence may have led the jury to conclude that [t]he City would have best served its residents by denying all the requests of both Pembroke and plaintiffs." Doc. 91 at 7. This argument has no merit. It is undisputed: Defendant *approved* three Pembroke land use applications, and no sleight of hand can change those facts. RLUIPA does not permit the jury or the court to decide whether defendant might have served its residents better by denying all of Pembroke's requests and these plaintiffs' request as well. Rather, as RLUIPA dictates, the court instructed the jury to consider whether the land use requests submitted by plaintiffs and Pembroke made them "similarly situated." And, if so, whether defendant had treated Pembroke more favorably. The jury found for plaintiffs on both questions. Nothing about the jury's verdict implies that injunctive relief is adverse to the public interest.

Defendant also contends that the public interest disfavors the injunction because defendant must protect the residential character of the cul-de-sac and the health, safety, and welfare of its residents. Plaintiffs respond, arguing that "the jury's determination that the Church's and Pembroke's land use requests were similarly situated entails the conclusion that the City could both protect its residents and approve the Church's proposed meeting house—just like it approved Pembroke's athletic complex." Doc. 95 at 8. The court agrees with plaintiffs. Given the RLUIPA right at issue here, the court finds that the public interest favors issuing the injunction.

### E. Scope of the Injunction

Last, defendant contends plaintiffs have requested an injunction that is too broad and not tailored to fit plaintiffs' injuries. *See Garrison*, 287 F.3d at 962 ("It is well settled an injunction

must be narrowly tailored to remedy the harm shown."). Specifically, defendant asks the court to impose time and occupancy restrictions on plaintiffs' use of the meeting house. Plaintiffs, in response, argue these restrictions would disregard the jury's verdict because plaintiffs' 2016 land use application contained no time or occupancy restrictions. So, plaintiffs argue, the jury found that plaintiffs and Pembroke were similarly situated in their land use requests even though plaintiffs' application contained no time and occupancy restrictions.[3] In short, plaintiffs argue that retroactively imposing time and occupancy restrictions on their 2016 land use application would produce even more unequal treatment.

Plaintiffs have the better end of this argument. The outcome on this issue turns on the Tenth Circuit's case law governing Equal Terms claims. At trial, the court's instructions asked the jury to decide whether plaintiffs' land use application was similarly situated to any of Pembroke's three land use applications. And, the court modeled its Equal Terms jury instruction after the instruction the Tenth Circuit had approved in *Rocky Mountain*. *Compare Rocky Mountain*, 613 F.3d at 1236 ("To prove [the Equal Terms] claim, the district court properly instructed the jury that RMCC must establish 'that [the County] treated [RMCC] less favorably in processing, determining, and deciding the 2004 special use application of the [RMCC] than [the County] treated a similarly situated nonreligious assembly or institution.'"), with Doc. 85 at 9 ("In order to prove they were treated on less than equal terms, Plaintiffs must establish that, in denying Plaintiffs' request to renovate the single-family house completely, the City treated Plaintiffs less favorably than it treated a similarly-situated secular entity."). The court's instructions also directed the jury to "consider all relevant similarities and differences between their respective requests." Doc. 85 at 9; *see Rocky Mountain*, 613 F.3d at 1237.

---

[3]  Plaintiffs recognize they remain bound to follow defendant's existing noise, traffic, and parking regulations. Doc. 95 at 10.

The court recognizes that these instructions provided the jury with the latitude to evaluate and decide whether a religious entity and secular comparator were similarly situated in their land use requests. Also, the court is mindful that one court has criticized the approach used by the court's instructions. *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2018). The Sixth Circuit, reviewing the various Circuit tests for Equal Terms claims, briefly commented on the Tenth Circuit's approach:

> The Tenth Circuit, on the other hand, is an outlier even when it comes to facially neutral land-use regulations. Rather than evaluating whether a comparator is similarly situated to a religious entity by reference to the land-use regulation's purpose, the Tenth Circuit weighs whether the uses, despite not being "identical," exhibit "substantial similarities" that would allow "a reasonable jury to conclude that [the entities] were similarly situated." *Rocky Mountain Christian Church v. Board of Cty. Comm'rs*, 613 F.3d 1229, 1236–38 (10th Cir. 2010).
>
> This test, in our opinion, lacks the clear guideposts that the other circuits have adopted for examining whether a comparator is similarly situated to a religious entity. Because the test is not couched in terms of the land-use regulation's purpose, a court applying it must determine which differences between entities are salient and which are insubstantial. The test therefore introduces significant subjectivity into the application of the equal terms provision.

*Id.* at 370. The Sixth Circuit, adopting its own Equal Terms test, thus added its voice to the cacophony of views about Equal Terms claims. Indeed, the appellate courts have reached no consensus about the meaning of RLUIPA's Equal Terms provision. The opposite is true: eight Circuits have applied eight glosses to this provision in RLUIPA. *Third Church of Christ, Scientist, of N.Y.C. v. City of N.Y.*, 626 F.3d 667, 670 (2d Cir. 2010); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 266 (3d Cir. 2007); *Opulent Life*, 697 F.3d at 292–93; *Tree of Life Christian Sch.*, 905 F.3d at 369; *River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371 (7th Cir. 2010); *Centro Familiar Cristiano Buenas*

11

*Nuevas v. City of Yuma*, 651 F.3d 1163, 1172–73 (9th Cir. 2011); *Rocky Mountain*, 613 F.3d at 1236–37; *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1311 (11th Cir. 2006).

Perhaps clarity is forthcoming: The plaintiff in the Sixth Circuit—Tree of Life Christian Schools—has filed a petition for a writ of certiorari. One of the issues it asks to present to the Court is whether the Sixth Circuit applied the proper test for a RLUIPA Equal Terms claim. Petition for a Writ of Certiorari for Tree of Life Christian Schools, Tree of Life Christian Sch. v. City of Upper Arlington, No. 18-844 (U.S. Jan. 16, 2019), https://www.supremecourt.gov/DocketPDF/18/18- 944/80721/20190116124431732_Cert%20 Petition.Filed.pdf. But, when the court submitted this case to the jury on November 9, 2018, the court, of course, was bound to apply Tenth Circuit precedent.

Under that precedent, the court twice considered defendant's argument that plaintiffs' 2016 land use request and Pembroke's three land use requests were not similarly situated—as a matter of law—because plaintiffs did not agree to time and occupancy restrictions: once on summary judgment and once during trial when defendant filed its Motion for Judgment as a Matter of Law at the close of plaintiffs' case. *See* Doc. 58 at 24–31; Doc. 83 at 5–6. Both times, the court carefully evaluated defendant's argument that plaintiffs' failure to agree to time and occupancy restrictions—in whole or in part—meant that no rational jury could find for plaintiffs on their Equal Terms claim. Both times, the court rejected defendant's argument because plaintiffs had adduced sufficient evidence to support a finding that plaintiffs' request and Pembroke's requests were similarly situated.

For example,[4] plaintiffs presented trial evidence that that their 2016 land use request and Pembroke's 1999 land use request to convert a vacant lot into a soccer field were similarly situated. Both Pembroke and St. Rose were institutional landowners in Mission Woods. And both owned property inside the defendant's Residential District. Both sought to convert their property to a public or semipublic use permitted within the zoning district. Neighbors expressed concerns about parking, traffic, and noise for both projects. On parking and traffic concerns, both Pembroke and St. Rose instructed their patrons to park in their respective parking lots. Last, plaintiffs presented evidence that Pembroke's soccer field would border multiple residences while the proposed meeting house would border just one residence. So, even with some differences in use restrictions accepted by Pembroke, a reasonable jury, the court concluded, could find that plaintiffs and Pembroke made similarly situated land use requests.

At bottom, defendant's argument that any injunctive relief should come with hours and occupancy limits asks the court to nullify a significant piece of the jury's findings. The court instructed the jury to compare Pembroke's applications with plaintiffs' land use application. The undisputed evidence showed that plaintiffs' land use request included no hours or occupancy restrictions. The court then asked the jury to answer a simple question: Are the two applicants similarly situated in their land use requests? The jury found that they were. Given that finding, returned under instructions approved by our Circuit, it is improper for the court to impose restrictions that the jury found unnecessary to equate plaintiffs' rejected use with Pembroke's approved uses.

---

[4] The court does not speculate whether the jury found plaintiffs' 2016 land use request similarly situated to one, some, or all of Pembroke's land use requests. Rather, the court illustrates the similarities between plaintiffs' request and one of Pembroke's requests based on the evidence presented at trial.

**IV. Conclusion**

Plaintiffs have met their burden on all four prongs of the permanent injunction standard. The court also concludes that plaintiffs' proposed injunctive relief is not too broad. The court thus grants plaintiffs' Motion for Permanent Injunction (Doc. 87).

Specifically, the court permanently enjoins defendant and orders it to approve plaintiffs' 2016 land use application (Pls.' Trial Ex. 32) within 45 days of this Order. *See Rocky Mountain*, 612 F. Supp. 2d at 1163 (providing defendant 45 days to approve the church's land use application). This deadline gives defendant ample time to approve plaintiffs' application, or, alternatively, to seek relief from the Court of Appeals.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion for Permanent Injunction (Doc. 87) is granted.

**IT IS FURTHER ORDERED THAT** the court **PERMANENTLY ENJOINS** defendant, **ORDERING IT TO APPROVE**—within 45 days of this Order—the 2016 land use application submitted by John Watkins for the Archdiocese and identified in the record as Plaintiffs' Trial Exhibit 32. *See* Doc. 84-2 at 2.

**IT IS SO ORDERED.**

**Dated this 10th day of May, 2019, at Kansas City, Kansas.**

                                            **s/ Daniel D. Crabtree**
                                            **Daniel D. Crabtree**
                                            **United States District Judge**